IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARTHUR A. BLUMEYER, III,            ) | |
|                                                              ) | |
|         Petitioner,                                   ) | |
|                                                              ) | |
|         v.                                                ) | Case No. 3:11-cv-1137-DRH-DGW |
|                                                              ) | |
| WENDY J. ROAL,                              ) | |
|                                                              ) | |
|         Respondent.                              ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by Chief United States District Judge David R. Herndon pursuant to 28 U.S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Amended Petition for a Writ of Habeas Corpus filed by Petitioner, Arthur A. Blumeyer, on March 22, 2012 (Doc. 10).  For the reasons set forth below, it is **RECOMMENDED** that the Petition be **DENIED**, that this matter be **DISMISSED**, and that the Court adopt the following findings of fact and conclusions of law.

FINDINGS OF FACT

Underlying Criminal Case and Litigation History

In 1994, Petitioner was convicted of mail fraud, wire fraud, conspiracy, and money laundering related to his involvement in a failed insurance company, Bel-Aire Insurance Company, in the Eastern District of Missouri.  His conviction and sentence were ultimately affirmed on appeal.  *United States v. Blumeyer*, 114 F.3d 758 (8th Cir. 1997).  As detailed by the Eighth Circuit Court of Appeals, Petitioner was the owner of Bel-Aire, which was

incorporated in Missouri and operating under a license (acquired by fraudulent representations) issued by the Missouri Department of Insurance (MDI). Over the course of 1987 to 1990, Petitioner engaged in various "shenanigans" which resulted in the seizure of Bel-Aire by the MDI and its subsequent and on-going liquidation – a liquidation that involves $2 million in assets for $90 million in claims. *Id.* at 763-764. In part, Petitioner was the mastermind or involved in: underfunding Bel-Aire at its inception but nonetheless representing to MDI that it was sufficiently funded in order to acquire a license to sell insurance in Missouri; schemes to use the services and influence of Dewey Crump, a Missouri State Representative and Bel-Aire board member, to influence the decisions of the MDI; transferring assets and liabilities between Bel-Aire and Atlantic General Insurance Company Limited, an off-shore company, in order to make Bel-Aire appear solvent; creating fraudulent transactions and documents in order to sell insurance in California; withdrawing large sums of money from brokerage accounts belonging to Bel-Aire, Atlantic General, and Risk Retention Service Corporation (also wholly owned by Petitioner) and located in the United States, and transferring them to off-shore accounts; and, last but not least, or the least surprising, directing his secretary to destroy relevant and presumably incriminating documents related to the California scheme and Atlantic General.

Petitioner was sentenced to 262 months' imprisonment followed by two years of supervised release.[1] As noted above, Petitioner unsuccessfully appealed his sentence and conviction. A subsequent Petition for a Writ of Certiorari was denied. *Blumeyer v. United States*, 522 U.S. 938 (1997) (mem). Petitioner filed a motion pursuant to 28 U.S.C. § 2255,

---

[1] According to the Bureau of Prison's webpage, Petitioner's projected release date is January 4, 2014. BUREAU OF PRISONS INMATE LOCATOR, *available at* http://www.bop.gov/iloc2/LocateInmate.jsp (search by name).

2

alleging various claims of ineffective assistance of counsel, that was denied on March 29, 2001. *See Blumeyer v. United States*, 2005 WL 3478508, *1 (E.D. Mo., 2005). A certificate of appealability and permission to file a second or successive motion were denied by the Eighth Circuit Court of Appeals. *Id.*

Petitioner has also filed for habeas relief in a number of jurisdictions and for various reasons unrelated to the matter pending before this Court. In addition, as noted in Chief Judge Herndon's Order dated March 29, 2012, the claims raised in the instant Petition have been raised in an earlier Petition (Doc. 12, p. 3) filed in this Court, styled *Arthur A. Blumeyer v. Warden Hollingsworth*, 3:08-cv-430-DRH-SCW,[2] and a petition before the United States District Court for the Eastern District of North Carolina, styled *Arthur A. Blumeyer v. Tracy Johns*, 5:11-hc-2023-FL.[3] The merits of these claims, however, have not been previously decided (Doc. 12, p. 3).

### Claims before the Court

Petitioner asserts that three Supreme Court cases, *United States v. Santos*, 553 U.S. 507 (2008), *Skilling v. United States*, 130 S.Ct. 2896 (2010), and *Black v. United States*, 130 S.Ct. 2963 (2010), render him actually innocent of the theft of honest services and the money laundering convictions.

The Indictment[4] filed in Petitioner's criminal case generally alleged that Petitioner

---

[2] This case was transferred to the Eastern District of North Carolina and assigned case number 5:10-hc-2059-BO. The matter was voluntarily dismissed, without prejudice, on July 29, 2010.

[3] This case was voluntarily dismissed, without prejudice, by an Order dated December 26, 2011.

[4] This document, along with the Judgment in Petitioner's criminal case (hereinafter "Judgment"), was filed as an attachment to the Petition (Doc. 1) filed in 3:08-cv-430-DRH-SCW. For ease of

3

engaged in a scheme to defraud the policyholders of Bel-Aire, Atlantic General, and other related companies; to defraud the citizens of the State of Missouri of the honest services of Dewey Crump; and, to obtain money by fraudulent means (Indictment p. 5-6). With respect to Crump, the Indictment further alleged that Petitioner directed Crump, whom he was paying, to introduce legislation in the Missouri House of Representatives that would benefit Bel-Aire, in part by stopping the investigation by the MDI (*Id.* p. 15).[5] And, as part of this scheme and conspiracy to defraud, Petitioner transmitted various faxes and mailings in violation of 18 U.S.C. §§ 2, 371, 1341, 1343, and 1346 (*Id.* pp.16-19). Petitioner argues that he is actually innocent of scheming to defraud others of the honest services of Crump, a public official.

Petitioner also was indicted on various counts of money laundering. These counts related, in part, to Petitioner's involvement with Risk Retention Service Corporation, a Missouri company wholly owned by Petitioner, that provided administrative services to Bel-Aire (*Id.* p. 3). Petitioner was charged with transferring money from Risk Retention to various domestic and foreign banks in furtherance or to conceal the fraud and conspiracy charges listed above, in violation of 19 U.S.C. §§ 2, 1956, 1957 (*Id.* pp. 25-40). Petitioner claims that he is actually innocent of these charges because the government did not prove that he used profits, as oppose to gross receipts, in any money laundering activities.

The indictment contained 34 counts: Petitioner was convicted of 27 (Judgment p. 1). These included 15 counts of wire fraud, 6 counts of mail fraud, 1 count of conspiracy, and 5

---

reference, it will be referred to as "Indictment" and page references will be to those in the original document.

[5] In particular, Crump introduced legislation that would eliminate the salary of MDI's Associate Legal Counsel, who was investigating Bel-Aire (Indictment, p. 23). Crump also introduced legislation that would make allow for Bel-Aire to conduct business with limited funds (*Id.*).

4

counts of money laundering (*Id.*).

5

## CONCLUSIONS OF LAW

Title 28 U.S.C. § 2255 is "ordinarily . . . the exclusive means for a federal prisoner to attack his conviction" and sentence. *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). A federal prisoner is limited to filing one motion for relief pursuant to § 2255 in the District where he was sentenced, generally within a year of his conviction. 28 U.S.C. § 2255(f). A second or successive motion may only be filed with permission of the relevant Court of Appeals – permission is granted in only two narrow instances: newly discovered evidence showing innocence or a new rule of constitutional law. 28 U.S.C. § 2255(h). In rare cases, however, a federal prisoner may be allowed to pursue a Writ of Habeas Corpus:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention*. 28 U.S.C. § 2255(e) (emphasis added).

A § 2255 Motion is "inadequate or ineffective" when "its provisions limiting multiple § 2255 motions prevent a prisoner from obtaining review of a legal theory that establishes the petitioner's actual innocence." *Kramer*, 347 F.3d at 217; *Hill v. Werlinger*, 695 F.3d 644, 647-648 (7th Cir. 2012); *See also In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998) ("A federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion."). Thus, if § 2255 would "deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense," the section could be deemed inadequate and a prisoner may proceed with a petition filed pursuant to 28 U.S.C. § 2241. *In re Davenport*,

6

147 F.3d at 611.

*In re Davenport* involved, in part, the claims of Sherman Nichols who was convicted of use (via mere possession) of a firearm in the commission of a drug offense. *Id*. at 607. Prior to Nichols' conviction, the Court noted that it was sufficiently "well-established" in this Circuit that "use" included mere possession, *Woodruff v. United States*, 131 F.3d 1238, 1242 (7th Cir. 1997), that Nichols was not required to make the argument, contained in *Bailey v. United States*, 516 U.S. 137 (1995) that "use" does not include mere possession, at any point because the law was "so firmly against him." *Davenport*, 147 F.3d at 610. Thus, he could not have made the argument in his first motion filed pursuant to § 2255 (prior to the *Bailey* decision); he could not have sought, after *Bailey* was rendered, to file a second § 2255 Motion because there was no newly discovery evidence and *Bailey* did not establish a new rule of constitutional law; and, *Bailey* was not made applicable merely to future conduct and did in fact apply to the conduct for which Nichols was incarcerated. *Id.* at 610. Nichols was therefore denied "*any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *Id.* at 611. In so ruling, the Court held that Nichols may proceed in his § 2241 case because *Bailey* was made retroactive, *Bousley v. United States* 523 U.S. 614 (1998), the change in law "eludes the permission in section 2255 for successive motions," and, the change in law was not merely reflective of a circuit split. *Davenport*, 147 F.3d 611-612

In distinction to Nichols' claim, James Davenport was convicted of being a felon in possession of a firearm and his sentence was enhanced based on a 1981 burglary conviction. Davenport could not avail himself of § 2241 because he "had the reasonable opportunity to obtain a reliable judicial determination of [the] legality" of his enhanced sentence via § 2255. *Id.*

7

at 609.

Petitioner's claims before this Court are more of the Davenport variety: Petitioner had the opportunity to raise his arguments in a § 2255 Motion (or on direct appeal) notwithstanding recent Supreme Court holdings that may apply to Petitioner's case. Unlike Nichols, there has been absolutely no showing that Petitioner was incapable of raising his arguments before the District Court in Missouri (in a § 2255 Motion) or that he was not able to raise his claims before the Eighth Circuit Court of Appeals on direct appeal. Unlike Nichols, there is no showing that Eighth Circuit case law wholly foreclosed the arguments made in the Petition before this Court. *See Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007) ("Only if the position is foreclosed (as distinct from not being supported by – from being, in other words novel) by precedent is the deadline lifted.").[6] Indeed, much of Petitioner's factual assertions are based on the findings of fact and conclusions of law of Judge James F. McHenry, a Circuit Judge of the Circuit Court of Cole County, Missouri, entered on November 23, 1992 in a case filed by the MDI prior to the indictment in this matter (Doc. 11-1, p. 2). Therefore, Petitioner should be foreclosed from using § 2241 to pursue his claims. Even if Petitioner may use §2241 to advance his claims, they still must fail.

Petitioner first argues that the holdings in *Skilling* and *Black* render the basis of his

---

[6] Petitioner makes reference to *United States v. Williams*, 605 F.3d 556 (8th Cir. 2010) for the proposition that it is Eighth Circuit precedent that proceeds in the money laundering context means gross receipts and not net income (Doc. 18, 0. 12 n.7). Not only does this case post-date Petitioner's conviction, it also does not establish that a contrary argument would be entirely foreclosed by precedent. Moreover, the fact that the Eighth Circuit may not have addressed such an argument that may have been made in a brief would be grounds for an ineffective assistance of counsel argument in a § 2255 Motion. It certainly should not be grounds for invoking the extraordinary writ at this stage of the proceedings.

8

conviction for fraud (based on a deprivation of the honest services of Crump) nonexistent.[7] Title 18 U.S.C. § 1346 defines the phrase "scheme or artifice to defraud," as used in the mail and wire fraud portions of the code: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." *Id*. In construing this statute, the Supreme Court in *Skilling* held that: "To preserve the statute without transgressing constitutional limitations, we now hold that § 1346 criminalizes *only* the bribe-and-kickback core of the pre-*McNally* [*v. United States*, 483 U.S. 350 (1987)] case law." *Skilling*, 130 S.Ct. at 2931 (emphasis in original) ("In the main, the pre-*McNally* cases involved fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived."). *Black*, which was decided on the same day as *Skilling*, involved a fraud count based, in part, on the defendants depriving their employer of their honest services by failing to report bogus fees received from their company. The Supreme Court noted that such a claim is not supported by § 1346 because the scheme involved no bribes or kickbacks (i.e. no third party). *Black*, 130 S.Ct. at 2968 n.7.

Petitioner's arguments based on *Skilling* and *Black* wholly fail to convince this Court that he was convicted of a non-existent crime. Petitioner states that Crump disclosed his association with Bel-Aire to the MDI and then outlines the activities that Crump engaged in on behalf of Bel-Aire and that Petitioner engaged in to somehow benefit MDI (Doc. 11, p.12-13). It is unclear to the Court how any of this has any bearing on Petitioner's conviction of fraud based on a deprivation of honest services. Petitioner then boldly states that there were "no bribes, no

---

[7] There is no argument that *Skilling* or *Santos* are not retroactive. *See e.g. Wooten v. Cauley*, 677 F.3d 303, 308 (6th Cir. 2012) (noting that the Fourth, Fifth, Eleventh, (and the Sixth) Circuit apply *Santos* retroactively); *United States v. Woodward*, 2012 WL 4856055, *4 n. 1 (D. Mass. 2012) (citing District Court cases where *Skilling* was found to be retroactive);

9

kickbacks, and no 'theft of honest services'" (*Id.* at 13). In the remainder of his brief he then accuses Petitioner's trial counsel of ineffective assistance of counsel and presents a litany of "illuminations" on the established facts in this case – none of which have any bearing on Petitioner's claim. As noted above, Petitioner was convicted for paying Crump, a public official, to introduce legislation that would directly benefit Bel-Aire (and hence Petitioner). This is the type of classic theft of honest services case that the Supreme Court approved. Petitioner has simply failed to present any argument that would entitle him to relief on this claim.

Petitioner next asserts that his money laundering convictions are nonexistent crimes based on the holding of *Santos*. Petitioner argues that the amounts he was accused of laundering were not profits of fraud but rather legitimate assets (Doc. 11, pp. 7-10). Title 18 U.S.C. § 1956 prohibits financial transactions using the "proceeds" of criminal activity. In a split decision, four Justices found that "proceeds" refers to "profits," and not "receipts"; Justice Stevens held that "proceeds" did not mean profits in every scenario; and, four Justices found that "proceeds" mean gross receipts. *See Santos*, 553 U.S. at 514, 528 (Stevens, J., concurring), 546 (Alito, J., dissenting). The fractured decision in *Santos* had the practical effect of making Justice Stevens' concurrence controlling. *See United States v. Aslan*, 644 F.3d 526, 544 (7th Cir. 2011) ("The plurality in *Santos* [ ] acknowledged that Justice Stevens' vote was necessary to the judgment, and noted that the Court's holding was therefore limited to the narrower ground upon which his opinion rested . . . . The plurality and Justice Stevens then disagreed on the characterization of that narrower ground."). As the Seventh Circuit noted:

> The fractured Supreme Court opinion addressed only promotional and not concealment money laundering (much less international concealment money laundering). And even in the context of promotional money laundering, it is not clear how the Court as a whole would rule if the predicate crime was wire fraud

10

>that was complete before the money laundering began. *Aslan*, 644 F.3d at 550; *United States v. Hosseini*, 679 F.3d 544, 552 (7th Cir. 2012).

*Santos* was overruled by Congress in 2009 when it amended § 1956 to specifically include gross receipts in its definition of proceeds. 18 U.S.C. § 1956(c)(9).

The Petition, the supporting brief, and the reply make no argument as to how *Santos* should be applied to Petitioner's claim, if at all. That is, Petitioner does not cite to any case authority, or otherwise make any reasonable legal argument, that *Santos*, which involved an illegal enterprise using proceeds to promote that enterprise, is applicable to the crimes for which Petitioner was convicted, concealing the proceeds of a legitimate enterprise created and run by fraudulent means. Petitioner does argue that in light of the split in *Santos*, the case that would control the claims against him is *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002). In that case, the Seventh Circuit Court of Appeals held that "when the crime entails voluntary, business-like operations, 'proceeds' must be net income; otherwise the predicate crime merges into money laundering (for no business can be carried on without expenses) and the word 'proceeds' loses operational significance." *Id.* at 476. The holding in *Scialabba*, however, would not have controlled Petitioner's conviction, Eighth Circuit case law would. *See Davenport*, 147 F.3d at 611-612  Even if *Scialabba* was controlling, Petitioner makes no "merger" argument – that is, he does not argue how the money laundering claim would merge with the fraud counts depending on the definition of proceeds. *See e.g. United States v. Rubashkin*, 655 F.3d 849, 865 (8th Cir. 2011). Petitioner cites to no Eighth Circuit case that would suggest that his money laundering conviction was fatally flawed in light of *Santos* or otherwise. Again, Petitioner is seeking an extraordinary remedy – a remedy that would require a more thorough explanation of why this Court should release him from federal custody.

11

In any event, Petitioner goes through each money laundering count and states, without citation to the record, that the monies involved were either a "very obvious expense check" (as to criminal Count 30), a "legitimate transfer of an uncontested asset from one company to another for the purpose of paying taxes" (as to criminal Count 31), a "legitimate assets" (as to criminal Counts 32 and 33), and, a "wire transfer" (as to criminal Count 34) (Doc. 11, pp. 7-9). He then states various facts found by a state court related to Bel-Aire's solvency, that some payments made by Risk Retention were for expenses, and that the state court found no "knowledge" that the monies were illegal proceeds that were concealed (Doc. 11 pp. 9-10). Petitioner's evidence misses the mark. The concealment in a money laundering scheme is not concealment of the actual financial transaction, but rather that the monies used in the transaction were the proceeds of unlawful activity and that the Petitioner knowingly was attempting to conceal the source, etc., of the proceeds. 18 U.S.C. §1956(a)(1)(B)(i). It is wholly irrelevant that Bel-Aire was allegedly solvent at some point in its short life, that Risk Retention did in fact use some money to pay expenses, or that a state court may not have found that some monies used by Risk Retention or Petitioner were not "illegal proceeds." *See Blumeyer*, 114 F.3d at 770-771.

Petitioner then states, without citation to any evidence, that "[n]ot a single [ ] [check or money transfer identified in the Indictment] was ever alleged to be 'profits'" (Doc. 11, p. 10). In its opinion, the Eighth Circuit stated, with respect to the money laundering counts that:

> As the MDI and other state authorities began closing in, Blumeyer began to launder money offshore. Near the end of the summer of 1990, he ordered $400,000 from an Atlantic General brokerage account in St. Louis transferred to the Bank of Nova Scotia in Anguilla. At about the same time, he transferred $400,000 from brokerage accounts in St. Louis belonging to two Bel-Aire affiliates to a bank in Denver, and then later to a bank in Panama. Of this $800,000, the government was able to determine that $225,000 eventually ended up in the hands of either Blumeyer or his personal holding company. During the

> relatively short life of Bel-Aire, Blumeyer received salaries, advances, and other benefits of more than $4 million from his companies. *Blumeyer*, 114 F.3d at 763-764.

In *Santos*, Justice Scalia indicated that "to establish the proceeds element under the 'profits' interpretation, the prosecution needs to show only that a single instance of specified unlawful activity was profitable and gave rise to the money involved in a charged transaction." The reasonable implication of this paragraph is that at least some of the $800,000, and the $225,000 that ended up with Blumeyer, were not mere gross receipts but were profits that were not used to pay expenses. Petitioner's own affidavit makes no mention of Risk Retention or the transfers/checks that are the subject of his money laundering convictions. There is also no reference to these transactions in the state court proceedings identified above. In sum, there is simply no showing that Petitioner is "actually innocent" of the money laundering charges such that his Petition should be granted.

This Court therefore **RECOMMENDS** that the Petition be **DENIED** in its entirety. However, it may be incumbent to point out that Petitioner's *Santos* argument (if it could proceed on the merits, which this Court does not find) would require more than just Petitioner's unsupported assertions. In order to make out this claim, at the very least, Petitioner would have to go through the evidence presented at trial with respect to the money laundering claim, identify the sources of the money that formed the bases of the transactions contained in criminal Counts 30 through 34, and determine whether these funds were profits or merely gross receipts. Merely citing to irrelevant (and unsupported) "facts" and making assertions without the benefit of controlling and/or relevant case authority do nothing to advance Petitioner's claims.

## RECOMMENDATIONS

For the foregoing reasons it is **RECOMMENDED** that the Amended Petition for a Writ of Habeas Corpus (Doc. 10) be **DENIED**, that this matter be **DISMISSED**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: January 29, 2013**

                                                **DONALD G. WILKERSON**
                                                **United States Magistrate Judge**