IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ARTHUR A. BLUMEYER, III,**

**Petitioner,**

**v.**

**J.S. Walton,**[1]

**Respondent.**                                    Case No. 11-cv-1137-DRH-DGW

MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I.    Introduction

Before the Court is a Report and Recommendation (R&R) (Doc. 26) of United States Magistrate Donald G. Wilkerson, issued pursuant to 28 U.S.C. § 636(b)(1)(B), FEDERAL RULE OF CIVIL PROCEDURE 72(b), and SDIL-LR 72.1(a), recommending denial of petitioner Arthur A. Blumeyer, III's, 28 U.S.C. § 2241 petition for writ of habeas corpus (Doc. 1, amended petition at Docs. 10, 11) and dismissal of this action. The R&R was sent to the parties, with a notice informing them of their right to file "objections" to the recommendation. In accordance with the notice, Blumeyer filed timely objections to the R&R (Docs. 27), to which the respondent has commented (Doc. 28). Because Blumeyer filed timely objections,

---

[1] As the current warden at USP-Marion, J.S. Walton is substituted as respondent. *See* Fed. R. Civ. P. 25(d); *Harris v. Warden,* 425 F.3d 386, 388-89 (7th Cir. 2005). Independently, the Court is aware that Blumeyer currently resides at a residential reentry center with a projected release date of January, 2014. *See* http://www.bop.gov/iloc2/LocateInmate.jsp (last visited Aug. 23, 2013).

this Court must undertake *de novo* review of the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may "accept, reject, or modify the recommended decision." *Willis*, 199 F.3d at 904. In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues for which specific objection has been made. *Id.* However, the Court need not conduct a *de novo* review of the findings of the R&R for which no specific objection has been made. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985). For the reasons discussed herein, the Court **ADOPTS** the findings and conclusions of the R&R.

## II. Background

Blumeyer does not object to the R&R's findings of fact, and finding no error, the Court adopts them as its own. Thus, the Court shall not detail the history of Blumeyer's direct appeal, *see United States v. Blumeyer*, 114 F.3d 758 (8th Cir. 1997), or his previous Section 2255 and multiple Section 2241 motions. The Court shall provide details of the underlying factual issues when necessary to its *de novo* review of the R&R's legal conclusions to which Blumeyer specifically objects.

In the most general of terms, Blumeyer's underlying criminal case arises from a complicated insurance fraud scheme. *See Blumeyer,* 114 F.3d at 761-63. In 1993, Blumeyer was indicted on 34 counts and convicted of 27 counts of

criminal activity. *See Blumeyer v. Hollingsworth,* 08-cv-430-DRH-SCW (S.D. Ill. 2008) (Doc. 1, pp. 10-56) (Blumeyer's criminal judgment and indictment attached to his Section 2241 petition previously filed in this district, transferred to the Eastern District of North Carolina, and subsequently voluntarily dismissed without prejudice).

Along with his co-defendants, Blumeyer was indicted on sixteen counts of wire fraud under 18 U.S.C. §§ 1343, 1346, six counts of mail fraud under 18 U.S.C. §§ 1341, 1346, and one count of conspiracy to commit mail and wire fraud under 18 U.S.C. § 371 (*Id.* at pp. 17-35).

Blumeyer was additionally charged with violating three different money laundering statutes: Counts 26 through 28, 18 U.S.C. § 1956(a)(1)(A)(i) (promoting a specified unlawful activity); Counts 29 and 30, 18 U.S.C. § 1957 (engaging in monetary transactions in criminally derived property); and finally Counts 31 through 34, 18 U.S.C. § 1956(a)(1)(B)(i) (concealing or disguising the proceeds of specified unlawful activity) (*Id.* at pp. 41-55).

Following a jury trial, Blumeyer was convicted of fifteen counts of wire fraud: Counts 1-14, 16; six counts of mail fraud: Counts 17-22; the conspiracy count: Count 23; and five of the money laundering counts: Count 30, 18 U.S.C. § 1957, and Counts 31-34, 18 U.S.C. § 1956(a)(1)(B)(i) (*Id.* at p. 10). Blumeyer was ultimately sentenced to a total term of 262 months' imprisonment (*Id.* at p. 11).

Blumeyer's petition asserts that three Supreme Court cases, *United States v. Santos,* 553 U.S. 507 (2008), *Skilling v. United States,* 130 S. Ct. 2896

(2010), and *Black v. United States*, 130 S. Ct. 2963 (2010), render him "actually innocent" of his "theft of honest services" and money laundering convictions. Thus, he is entitled to review under the "savings clause" of Section 2255.

The R&R concludes that Blumeyer has not demonstrated that Eighth Circuit precedent wholly foreclosed his instant arguments during his direct appeal or first Section 2255 motion and thus Section 2255 is not "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Alternatively, the R&R notes that the cases on which Blumeyer relies would not provide him his requested relief even if his claims were properly before the Court.

### III.     Objections

**1.     Procedural Availability of Section 2241**

Blumeyer first objects to the R&R's conclusion that Eighth Circuit case law did not foreclose his instant arguments on direct appeal or during his first Section 2255 motion. Blumeyer argues that Section 2255 is "inadequate or ineffective" because *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002) (first case support in Seventh Circuit for a *Santos*-type argument), *Santos*, *Skilling*, and *Black* "were decided long after Blumeyer's conviction, sentencing, direct appeal, and first round of collateral attack."

As Blumeyer brings his claims under the "savings clause" of Section 2255, he must demonstrate Section 2255 is, "inadequate or ineffective to test the legality of his detention," for the Court to entertain his Section 2241 petition. *Unthank v. Jett,* 549 F.3d 534, 535 (7th Cir. 2008) (citing 28 U.S.C. § 2255(e)). "Inadequate

or ineffective" means that "a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence." *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *see also In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998).

As the Seventh Circuit recently reiterated, *Davenport* explained the meaning of "inadequacy," stating, "[a] procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012) (emphasis in original) (quoting *Davenport*, 147 F.3d at 611).

Thus, in *Morales v. Bezy*, 499 F.3d 668 (7th Cir. 2007), the court determined, "that the petitioner could not show that his § 2255 remedy was inadequate or ineffective because his claim was not foreclosed by binding precedent," as "'the fact that a position is novel does not allow a prisoner to bypass section 2255 . . . Only if the position is foreclosed (as distinct from not being supported by—from being, in other words, novel) by precedent' is a § 2255 remedy inadequate." *Id.* at 648 (citing *Morales*, 499 F.3d at 672); *see also Davenport*, 147 F.3d at 610 (petitioner had no reasonable opportunity on direct appeal or in his first 2255 petition to challenge the legality of his conviction where "[t]he law of the circuit was so firmly against him that we have held that in that period defendants in this circuit did not have to raise [the] issue in order to

preserve it as a basis for collateral attack later on"). For the reasons states below, the Court agrees with the R&R in its conclusion that Blumeyer has not demonstrated his claims are properly before the Court under Section 2241.

2.  **Theft of Honest Services**

Blumeyer argues that *Skilling* and *Black* require that his "theft of honest services" conviction and sentence be vacated because, "[t]he facts are, Blumeyer never provided bribes or kickbacks to Dewey Crump" (Crump), Missouri state representative and chairman of the House Insurance Committee at the time Blumeyer's fraudulent scheme was executed (Doc. 27, p. 3).

The mail and wire fraud statutes criminalize the conduct of those who devise or intend to devise "a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . ." through use of the mail system, *see* 18 U.S.C. § 1341, or wire, radio, or television communication, *see* 18 U.S.C. § 1343. In *McNally v. United States,* 483 U.S. 350 (1987), the Supreme Court held that the mail and wire fraud statutes only applied to fraudulent schemes designed to deprive another of tangible property rights, not an intangible right to honest government. Thus, Congress responded by enacting 18 U.S.C. § 1346, defining "scheme or artifice to defraud" for purposes of mail and wire fraud as including "a scheme or artifice to deprive another of the intangible right of honest services."

In *Skilling,* the Supreme Court addressed Skilling's argument that Section 1346 was unconstitutionally vague. The Supreme Court determined that the core

of pre-*McNally* case law "involved fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." *Skilling,* 130 S. Ct. at 2928. By constraining its application in this way, the Supreme Court avoided holding Section 1346 constitutionally vague. *Id.* Decided the same day as *Skilling* and in light of its holding, *Black* held that jury instructions allowing the defendants' convictions for "honest services" fraud for conduct not involving bribery or kickbacks were erroneous. *Black,* 130 S. Ct. at 2968.

On direct appeal, Blumeyer and co-defendants argued they could not be found guilty of defrauding citizens of their right to the honest services of Crump on the following grounds: 1. The enactment of Section 1346 did not overrule *McNally* and thus the mail fraud statute was limited to property rights; 2. The scheme alleged included activities undertaken before Section 1346's effective date and thus their convictions were invalid; and 3. The convictions could not stand even under Eighth Circuit pre-*McNally* case law. The Eighth Circuit rejected all of their arguments in turn, finally noting, "the jury reasonably could have concluded that the defendants schemed to deprive Missourians of [Crump's] honest services by appropriating his discretion for the benefit of Bel-Aire, a company in which he concealed his interest." *Blumeyer,* 114 F.3d at 765-66. However, the Eighth Circuit did not address whether Section 1346 was unconstitutionally vague, the distinct issue determined in *Skilling*, because Blumeyer and his co-defendants

did not raise it. Blumeyer does not address his failure to raise this discrete issue on direct appeal.

Regardless, more than decade after Blumeyer's direct appeal, the Supreme Court decided *Skilling,* giving Section 1346 a narrower reading than previously and thus seemingly constituting a "change in law" both post-dating Blumeyer's direct appeal and Section 2255 petition and "eluding the permission" in Section 2255 for successive motions because it involves statutory, not constitutional, interpretation. *See generally United States v. Prevatte,* 300 F.3d 792, 800 (7th Cir. 2002).

However, even if Blumeyer has raised an argument foreclosed to him on direct appeal and collateral review, the inquiry does not end here, as Blumeyer has not established a non-frivolous claim of actual innocence. *See Kramer v. Olson,* 347 F.3d 214, 217 (7th Cir. 2003). Blumeyer was convicted of Counts 1 through 14, and 16, for wire fraud under 18 U.S.C. §§ 1343, 1346, and Counts 17 through 22 for mail fraud under 18 U.S.C. §§ 1341, 1346. As to the factual bases of the fraudulent scheme, Blumeyer's indictment charged "a single scheme with several unlawful goals." *Blumeyer,* 114 F.3d at 769. Specifically, the indictment states:

> [T]he defendants herein, acting together and with others, unlawfully willfully and knowingly devised and intended to devise a scheme and artifice: (1) to defraud policyholders, potential policyholders and brokers of Bel-Aire, Atlantic General, Atlantic General and specialty, and Marigot, (2) to defraud the citizens of the State of Missouri of their right to the honest and faithful services of an elected official, and (3) to obtain money and property by means of false and

> fraudulent pretenses, representations and promises, knowing the same would be and were false and fraudulent when made.

(08-cv-430-DRH, Doc. 1, at pp. 21-22).

The indictment then summarizes the factual bases of the "scheme to defraud." It cites Blumeyer's incorporation of "U.S. Reinsurance Company Limited" in Anguilla, the concealment of his interest in that company, his subsequent direction that its name be changed to "Atlantic General Insurance Company Limited" (*Id.* at p. 22, ¶ A), and Blumeyer's application to the Missouri Department of Insurance (MDI) for a certificate of authority to sell casualty insurance which falsely represented that Bel-Aire (wholly owned and operated by Blumeyer and his wife) possessed $900,000.00 in unencumbered initial capital and surplus (*Id.* at pp. 22-23, ¶ B). Upon receiving a certificate of authority, Blumeyer falsely marketed Bel-Aire to consumers who were unaware of its fraudulent capitalization and certification, resulting in Blumeyer's defrauding purchasers of approximately 40 million dollars (*Id.* at pp. 23, ¶ D). The indictment alleges numerous additional false representations Blumeyer made to the MDI in relation to his scheme to defraud consumers of money and property (*Id.* at pp. 24-27, ¶ E(1)-(7)).

As to Crump's involvement and thus Blumeyer's "scheme or artifice to deprive another of the intangible right of honest services," 18 U.S.C. § 1346, the indictment states,

> It was a part of said scheme that from June of 1988 until May of 1990, [Crump], a defendant herein, was paid $110,00.00 by Bel-Aire and [Blumeyer], but did no real work in return for the above

> compensation. It was further part of said scheme that [Crump] was directed by [Blumeyer] and John W. Peckham, Jr. [Peckham] to introduce legislation into the Missouri House of Representatives specifically for the benefit of Bel-Aire. Some of this legislation would have the effect of slowing down or stopping the [MDI's] investigation into [Blumeyer], Bel-Aire, Atlantic General and other companies controlled by [Blumeyer]. Other pieces of legislation introduced by [Crump] were designed to get Bel-Aire out of financial trouble. [Crump] never informed the legislature or the citizens of Missouri that he was being paid by [Blumeyer] to introduce this legislation. [Blumeyer] and [Crumps'] purpose in introducing this legislation was to keep the [MDI] from discovering the true financial condition of [Blumeyer's] insurance companies, to allow [Blumeyer] to keep selling insurance in the State of Missouri and elsewhere, and to keep the aforedescribed fraud scheme from being detected and stopped by the [MDI].

(*Id.* at pp. 30-31, ¶ O).

Further, in summarizing the trial record on direct appeal, the Eighth Circuit noted that Peckham, whose duties included "legislative and regulatory compliance work" for the failed insurance companies, wrote a memorandum to Blumeyer regarding Crump:

> Peckham's memorandum requested $475 per month to cover Crump's expenses for an apartment, utilities, and furniture rental. Blumeyer's secretary attached a note to the memorandum that read, "John, Art said $400 per month for Dewey." Tr. at 1286. Crump was also on the payroll of one of Bel-Aire's affiliates at a salary of approximately $55,000 per year-which he did not report in financial disclosure statements-and had a company credit card, even though he apparently did no work for the company. (Crump testified that he organized social and charitable events for legislators and staff on behalf of Blumeyer's companies.) Blumeyer and Peckham addressed considerable correspondence to Crump regarding insurance bills in the Missouri legislature. In February 1988, the House Appropriations Committee deleted from the MDI's appropriation bill an amount corresponding to the salary of Mark Stalhuth, the attorney responsible for the autumn 1987 audit of Bel-Aire. When the MDI's commissioner investigated, the chairman of the Appropriations Committee suggested that Stalhuth had made some enemies. The

> commissioner then spoke to Crump, who agreed to restore the funding if the MDI increased the salary of his uncle (an MDI employee) and hired another individual as an examiner. When the MDI complied, the funding for Stalhuth's position was restored.
> Crump also sponsored a 1989 legislative amendment that would have made it easier for Bel-Aire to meet the MDI's capital requirements, and he introduced a bill in 1990 that would have altered the requirements of Stalhuth's position so that Stalhuth would not have qualified for the job. In addition, Crump spoke to MDI examiners during a 1989 audit of Bel-Aire, mentioning a recently enacted statute that had raised their salaries and commenting that Blumeyer was a good businessman.

*Blumeyer,* 114 F.3d at 762-63.

As the R&R notes, Blumeyer offers his view of the above factual statements, arguing they do not constitute "bribery or kickbacks." In so doing, Blumeyer weaves a tale of insurance-related do-gooding. According to Blumeyer, his relationship with Crump resulted in "higher compensation of the MDI staff, more rigid MDI position requirements [which presumably Stalhuth could attest to]; provided for raising the amount paid in case of insolvency from $50,000.00 to $250,000.00 and created the position of an actuary." Thus, "Blumeyer fails to see how Bel-Aire and 'hence himself' directly benefitted other than creating a much stronger insurance regulatory body" (Doc. 27, p. 4).

Obviously, Blumeyer would like to re-litigate his entire case, as he disputes the characterization of the factual statements of the indictment, as well the Eighth Circuit's findings on direct appeal. This remedy is simply not available to Blumeyer. Blumeyer argues the above facts amount to legitimate business dealings. The jury and Eighth Circuit disagreed. On the basis of the above, a reasonable jury could conclude that Blumeyer "appropriated" Crump's judgment

Page 11 of 18

through payment; a typical "bribe or kickback" scheme. *See Ryan v. United States*, 645 F.3d 913, 918 (7th Cir. 2011), *vacated on other grounds by Ryan v. United States*, 132 S. Ct. 2099 (2012). Thus, the Court adopts the legal conclusion of the R&R that Blumeyer has not presented a non-frivolous claim of actual innocence under *Skilling* and *Black*.[2]

### 3. Money Laundering Convictions

Blumeyer alleges his money laundering convictions must be vacated in light of *Santos*, interpreting the meaning of "proceeds" under 18 U.S.C. § 1956(a)(1). Section 1956(a)(1) states,

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or
>
> . . .
>
> (B) knowing that the transaction is designed in whole or in part—
>
> > (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;

---

[2] Respondent's initial response notes that Blumeyer was convicted under alternate theories of guilt, similarly to Skilling. Skilling's convictions were upheld on appeal as the Fifth Circuit found that the improper "honest-services" instruction at issue was harmless beyond a reasonable doubt. *See United States v. Skilling*, 638 F.3d 480, 488 (5th Cir. 2011). Blumeyer does not address the fact that the indictment in his case alleged a single fraudulent scheme with three unlawful goals, the Eight Circuit's statement that "proof of any of the three goals of the scheme is sufficient to support a conviction," *Blumeyer*, 114 F.3d at 769, nor does he argue the jury instructions given in his case were improper. On this basis, and because neither the R&R nor Blumeyer's objections address the "alternative" theories of guilt at issue, the Court does not meaningfully address respondent's implied argument that even if a reasonable jury would not find the above amounts to "bribes and kickbacks" Blumeyer's convictions would be upheld under alternate theories of guilt (the two remaining unlawful goals of the scheme) alleged in the indictment and proven at trial.

18 U.S.C. § 1956(a)(1)(A)(i),(B)(i).

In *Santos* the issue was whether "proceeds" should be read broadly to mean "receipts" of specified unlawful activity or narrowly to include only "profits" in the context of Section 1956(a)(1)(A)(i) (intent to promote). 553 U.S. at 509. Santos was convicted of one count of conspiracy to run an illegal gambling business, one count of running an illegal gambling business, one count of conspiracy to launder money, and two counts of money laundering under Section 1956(a)(1)(A)(i). *Id.* at 509-10.[3] On Santos' motion under Section 2255, the district court vacated his money laundering convictions under *United States v. Scialabba*, 282 F.3d 475, 476 (7th Cir. 2002) (holding, also in context of Section 1956(a)(1)(A)(i), in an illegal gambling case that, "at least when the crime entails voluntary, business-like operations, 'proceeds' must be net income; otherwise the predicate crime merges into money laundering (for no business can be carried on without expenses) and the word 'proceeds' loses operational significance"). *Id.* at 510.

The Seventh Circuit affirmed, *Santos v. United States*, 461 F.3d 886 (7th Cir. 2006), as did the Supreme Court. A four-justice plurality applied the rule of lenity, concluding the word "proceeds" means "profits" and not "receipts" in all cases. *Id.* at 510-14. Thus, the plurality determined this definition prevented a "merger problem," as defining "proceeds" as "receipts" would mean nearly every

---

[3]As opposed to Santos, who was convicted under 18 U.S.C. § 1956(a)(1)(A)(i), the Court reiterates that Blumeyer was convicted under 18 U.S.C. § 1957 (Count 30) and 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 31-34).

violation of the illegal-lottery statute at issue would necessarily be a violation of the money laundering statute. *Id.* at 515 (Scalia, J.).

However, Justice Stevens' controlling concurrence declined to "pick a single definition of 'proceeds' applicable to every unlawful activity." *Id.* at 525 (Stevens, J.); *see also United States v. Lee,* 558 F.3d 638, 643 (7th Cir. 2009); *United States v. Aslan,* 644 F.3d 526, 544 (7th Cir. 2011) ("The plurality in *Santos II* acknowledged that Justice Stevens' vote was necessary to the judgment, and noted that the Court's holding was therefore limited to the narrower ground upon which his opinion rested. The plurality and Justice Stevens then disagreed on the characterization of that narrower ground.") (citation omitted). Justice Stevens noted the meaning of "proceeds" turns on whether legislative history indicates that Congress intended to reach the gross revenues of a specified crime. *Id.* at 528.[4]

In response to the R&R's conclusion that Blumeyer has not demonstrated that Eighth Circuit precedent foreclosed his *Santos*-based argument on direct appeal or during his first Section 2255 motion, Blumeyer states his claim under *Santos* "would have been considered nothing more than a novel argument had anyone actually thought of such a challenge almost twenty (20) years ago" (Doc. 27, p. 2). Of course, the fact a position is "novel" does not render Section 2255 "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); *Hill,* 695 F.3d at 648-49; *Morales,* 499 F.3d at 672.

---

[4] Congress overruled *Santos* in 2009 when it amended 18 U.S.C. § 1956 to define "proceeds" as "gross receipts" in all contexts. *See* 18 U.S.C. § 1956(c)(9). However, because the legislative amendment does not apply retroactively, it does not affect the analysis here. *See United States v. Moreland,* 622 F.3d 1147, 1162 n. 4 (9th Cir. 2010).

Further, Blumeyer references *United States v. Williams,* 605 F.3d 556 (8th Cir. 2010) (noting that under pre-*Santos* Eighth Circuit precedent, "proceeds" includes anything that is the gross receipt of illegal activity) (citing *United States v. Simmons,* 154 F.3d 765, 770 (8th Cir. Aug. 17, 1998) (finding that for purposes of forfeiture provision under Racketeer Influenced and Corrupt Organizations Act (RICO), "proceeds" are gross receipts of the illegal activity)).

The R&R correctly notes that *Williams* obviously post-dates Blumeyer's appeal and Section 2255 motion. Blumeyer's objections argue that he cites *Williams* for its citation to *Simmons.* However, *Simmons* also post-dates Blumeyer's direct appeal, *United States v. Blumeyer,* 114 F.3d 758 (8th Cir. 1997), *cert. denied,* 522 U.S. 938 (Oct. 20, 1997), the filing of his Section 2255 motion, *see Blumeyer v. United States,* 98-cv-301-JCH (E.D. MO., filed on Feb. 18, 1998), and does not demonstrate Blumeyer's argument was foreclosed to him. *Simmons* in turn cites *United States v. Riley,* 78 F.3d 367, 371 (8th Cir. 1996), which noted that under RICO's forfeiture provisions, "'proceeds' means something less than the gross receipts of a defendant's insurance business because an insurer's gross receipts would include, for example, amounts needed to pay policyholder claims." Thus, at the time of petitioner's direct appeal and the filing of his Section 2255 motion, an argument that "proceeds" means "profits" and not "receipts" in the money-laundering context was not foreclosed to him. Accordingly, Section 2255 is not inadequate or ineffective to test the legality of his detention in the context of a *Santos*-based claim.

As Blumeyer's objections do not demonstrate a *Santos*-based argument was foreclosed to him, and because his objections do not substantively add to his arguments, the Court shall not significantly address Blumeyer's undeveloped and unsupported argument that *Santos* holds his money laundering convictions merge with his wire and mail fraud convictions. The R&R finds Blumeyer's petition, supporting brief, and reply make no argument as to how *Santos*' fractured opinion should be applied to Blumeyer's convictions, nor does he provide any Eighth Circuit case law demonstrating *Santos*' applicability to his case.

Blumeyer's objections do not further enlighten the Court as to the substance of his "merger" argument. *Santos* involved a situation where defining "proceeds" as "gross receipts" under Section 1956(a)(1)(A)(i) would mean "nearly every violation of the illegal lottery statute would also be a violation of the money-laundering statute because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." *Santos,* 553 U.S. at 515 (Scalia, J.).

Blumeyer has not articulated how his convictions for concealing and disguising the "proceeds" of wire and mail fraud would merge with his convictions for wire and mail fraud, which are based on transmissions and mailings distinct from the transactions on which his money laundering convictions are based. Blumeyer's objections once again merely recite his repeated claims that the transactions underlying the money laundering charges represent legitimate

business dealings conducted using legitimate assets. Blumeyer essentially argues that the transactions were not designed to conceal the proceeds of mail and wire fraud. This type of argument simply does not implicate *Santos* in this Court's opinion. Thus, even if Blumeyer's "*Santos*" argument was properly before the Court, he has not demonstrated that it would hold him actually innocent of his money laundering convictions.

4. **Evidentiary Hearing, Evidence Never Considered, and Miscarriage of Justice**

Blumeyer (through his counsel) seemingly admits he has not argued his claims with the necessary clarity and requests a hearing to more thoroughly explain why the Court should release him from federal custody. Blumeyer has had multiple opportunities to articulate his claims in reference to the trial record. He has not done so. He has not even provided the Court with a complete copy of his criminal indictment, forcing the Court to rely on a copy Blumeyer attached to his previous Section 2241 petition he filed *pro se*. Blumeyer has not met his burden of demonstrating an evidentiary hearing is necessary.

Blumeyer's citation to *Schlup v. Delo,* 513 U.S. 298 (1995), which concerns the gateway standard for obtaining federal habeas review of a procedurally defaulted constitutional claim on the basis of new evidence, does not convince the Court otherwise. Blumeyer's claims do not concern constitutional violations that occurred at trial and his "new" evidence is not new (*See* Doc. 11, pp. 18-24). Further, Blumeyer's objection titled, "Miscarriage of Justice," in which he summarily recites standards applicable on collateral review, also fails to persuade

the Court that an avenue through which Blumeyer can re-litigate his entire case (the remedy he obviously seeks) is open to him. For the reasons stated above, Blumeyer has not demonstrated that Section 2255 was "inadequate or ineffective to test the legality of his detention," 28 U.S.C. § 2255(e), and moreover, he has not demonstrated a non-frivolous claim of actual innocence. Blumeyer's objections do not persuade the Court that the R&R erred in its legal analysis. The Court **ADOPTS** the R&R in its entirety.  The Court notes that a certificate of appealability is not required in the event Blumeyer appeals this Order. *See Walker v. O'Brien,* 216 F.3d 626, 638 (7th Cir. 2000)

### IV.  Conclusion

For the reasons discussed herein, the Court **ADOPTS** the findings of the R&R (Doc. 26) over Blumeyer's objections (Docs. 27).  Thus, Blumeyer's petition is **DENIED** in its entirety. Accordingly, Blumeyer's claims are hereby **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

Signed this 26th day of August, 2013.

Digitally signed by David R. Herndon
Date: 2013.08.26 12:42:16 -05'00'

**Chief Judge**
**United States District Court**